# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE INDIANA

NORTH AMERICAN VAN LINES, INC.,

Plaintiff,

v.

CAUSE NO.: 1:18-CV-196-HAB

NORTH AMERICAN MOVING & STORAGE, INC.,

Defendant.

## OPINION AND DEFAULT JUDGMENT

This matter is before the Court on a Plaintiff's Motion for Entry of Default Judgment [ECF No. 47], filed by Plaintiff North American Van Lines, Inc. (NAVL), on December 20, 2019. NAVL is seeking a default judgment against Defendant North American Moving & Storage, Inc., for claims of Federal Trademark Infringement, Lanham Act Section 32 (15 U.S.C. §1114); Federal Unfair Competition, Lanham Act Section 43(a) (15 U.S.C. §1125(a)); Anticybersquatting Consumer Protection Act (15 U.S.C. §1125(d)); and Indiana Trademark Infringement (Ind. Code § 24-2-1-13 (2017)). Also pending before the Court is Plaintiff's Motion to Strike Evidence [ECF No. 50], which is directed at a letter addressed "To Whom This May Concern" advising that Defendant has not been in business since 2018.

NAVL represents that the Clerk of Court entered default against Defendant on August 6, 2018, and this matter is ripe for entry of judgment. As that is not a complete procedural history, the Court will provide additional background.

## BACKGROUND

NAVL filed its Complaint on June 26, 2018. On August 6, 2018, the Clerk entered the default of the Defendant [ECF No. 10]. Thereafter, on September 7, 2018, NAVL moved for

default judgment. The Court determined that ascertaining with reasonable certainty the proper amount of damages to award in this case would require an evidentiary hearing, and referred the matter to the Magistrate Judge to conduct a hearing to determine the amount of damages to award the NAVL and to prepare a report and recommendation.

After the Magistrate Judge set an evidentiary hearing date, NAVL moved to vacate the hearing on grounds that it was not necessary where NAVL was electing an award of statutory damages only. NAVL proposed that supplemental briefing on damages would be sufficient. The Magistrate Judge denied the request, noting that its Order setting the hearing identified a discrepancy between the relief sought in the Complaint and the relief sought in the Motion for Default Judgment.

Specifically, in its Complaint, NAVL sought injunctive relief and "to recover Defendant's profits, actual damages, trebled profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1114, 1116, and 1117." (ECF No. 1 ¶ 44). Similarly, in Count 2 of the complaint—a claim for unfair competition under the Lanham Act—NAVL sought injunctive relief and "to recover Defendant's profits, actual damages, costs, and reasonable attorney's fees." (ECF No. 1 ¶ 50). In its motion, however, NAVL argued that it should be awarded up to $2 million in statutory damages on a claim of "willful trademark counterfeiting" under the Lanham Act, a claim which the NAVL had not pled in its complaint. *See Tovey v. Nike, Inc.*, No. 1:12CV448, 2013 WL 486341, at *3 (N.D. Ohio 2013) ("[T]he standard for trademark counterfeiting is significantly higher than that for trademark infringement and slight differences, so long as they are apparent to the typical consumer upon minimal inspection, will defeat the allegation that a mark is counterfeit.") (citations and internal quotation marks omitted).

On February 8, 2019, NAVL filed an Amended Complaint for Trademark Infringement to add a claim for willful trademark counterfeiting. In connection with the allegation, NAVL sought statutory damages of $2,000,000 in accordance with 15 U.S.C. § 1117(c)(2). The Amended Complaint, which became the operative pleading, rendered moot the request for default judgment on the original Complaint.

On May 24, 2019, NAVL sought the entry of default on the Amended Complaint. The request was denied because there was inadequate proof that Defendant had been served with the Amended Complaint. On November 27, 2019, an Affidavit for Proof of Service [ECF No. 46] was filed with the Court. The deadline to file an answer or otherwise respond to the First Amended Complaint passed on December 12, 2019.

On December 20, 2019, NAVL filed the Motion for Default Judgment that is currently pending, along with a Memorandum in Support [ECF No. 48].[1] On December 27, 2019, the Court received an unsigned letter. The unidentified author indicated that he receives court documents on behalf of the Defendant in this case, and that Defendant has not been in business since 2018. On January 3, 2020, NAVL filed a Motion to Strike Evidence Submitted by Defendants, noting that the Letter was anonymous, that the deadline to file an answer or motion under Rule 12 had already passed, and that the website at the URL northamericamoving.com was still operative and still infringing NAVL's Registered Trademarks in the same manner as outlined in the Amended

---

[1] Confusingly, the Motion for Default Judgment cites to the original Complaint and the allegations made therein instead of to the First Amended Complaint. In doing so, NAVL requests default judgment on the claims asserted in the original Complaint, which did not include trademark counterfeiting. However, in its request for damages, NAVL again "seeks an award up to the maximum statutory damages authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting." (Mem. 14, ECF No. 48.)

Complaint. NAVL attached a screenshot of www.northamericanmoving.com last visited on January 2, 2020.[2]

## ANALYSIS

Federal Rule of Civil Procedure 12(a) generally requires a defendant to file an answer within twenty-one days after the service of the summons and complaint; the failure to do so may result in the defendant's default under Rule 55(a). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). An entry of default must proceed a default judgment. *See* Fed. R. Civ. P. 55(b).

Here, the clerk has not made an entry of default on the Amended Complaint. However, "[w]hen deciding a motion for entry of default judgment, if there is no entry of default by the clerk, the court can treat such motions as requests for both: (1) an order to the clerk to enter the default; and (2) entry of default judgment." *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005); *see also Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) (advising that default may be entered by the court even though Rule 55(a) refers to entry of default by the clerk). Accordingly, the Court will treat the NAVL's Motion as a request for the entry of default as well as the entry of default judgment.

**A.     Entry of Default**

According to an Affidavit for Service filed on November 27, 2019, NAVL effectuated service of the summons and First Amended Complaint for Trademark Infringement on November 21, 2019. A responsive pleading was due on December 12, 2019. Defendant has not filed any pleading or motion permitted by law or otherwise appeared in this action. The anonymous letter

---

[2] Although the Motion states that the site was last visited on January 2, 2019, the Court assumes that this was a typographical error, and that the correct date is January 2, 2020.

filed with the Court on December 27, 2019, is not a response that precludes the entry of default. Even if the Court construed it as an intent to defend the suit, a corporation cannot appear pro se. *See Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011) (noting that corporations are "legally incapable of appearing in court unless represented by counsel"). Accordingly, the anonymous letter is not an appearance or a pleading in defense.

The first step of default proceedings has been satisfied because Defendant has "failed to plead or otherwise defend" and this "failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

**B.     Default Judgment**

Once the default of a party has been established for failure to plead or otherwise defend, Federal Rule of Civil Procedure 55 authorizes a party to seek and a court to enter a default judgment. As long as a plaintiff's allegations are well-pled, a default judgment, as a general rule, "'establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint.'" *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (quoting *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982)); *see also O' Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993). The party moving for a default judgment must then establish entitlement to the relief sought. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); *see also e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) ("[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate").

Under Rule 54(c), a party obtaining a default judgment in its favor is not entitled to a judgment that differs in kind from or an award that exceeds the amount demanded in the pleadings. Courts must ascertain with reasonable certainty the proper amount to award as damages to the

prevailing party, based upon either an evidentiary hearing or from definite figures contained in documentary evidence or in detailed affidavits. *In re Catt*, 368 F.3d at 793; *Dundee Cement Co.*, 722 F.2d at 1323.

NAVL seeks judgment in its favor for willful infringement of the its trademark, 15 U.S.C. § 1114, unfair competition, 15 U.S.C. § 1125(a), willful cybersquatting, 15 U.S.C. § 1125(d), Indiana Trademark Infringement, Indiana Code § 24-2-1-13, and Indiana common law unfair competition. Additionally, NAVL's First Amended Complaint contains an allegation of trademark counterfeiting, but NAVL does not reference it until its discussion of damages, beginning on page 14 of its Memorandum.

### *1.     Trademark Infringement and Unfair Competition*

Trademark infringement, including counterfeiting, is prohibited under 15 U.S.C. § 1114(a). The Lanham Act prohibits the use, without the registrant's consent, of a copy, counterfeit, or colorable imitation of a registered trademark in connection with the advertising or sale of goods or services where such use "is likely to cause confusion, or cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prove trademark infringement, a plaintiff must show that (1) its marks are distinctive enough to be worthy of protection and (2) the defendant's use of those marks is likely to cause consumers to be confused as to the source of the product. *Neopost Industrie B.V. v. PFE Intern., Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496–97 (7th Cir. 2001)). The same standards apply to both trademark infringement and unfair competition claims. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

The factual allegations in the First Amended Complaint, taken as true, establish Defendant's violations of § 1114 and § 1125 and common law unfair competition. However, not

all trademark infringement is counterfeiting. "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. A defendant who uses a counterfeit of a registered mark, as opposed to a mere colorable imitation, is subject to increased civil damages as well as criminal penalties. See 15 U.S.C. § 1117(b) (providing treble damages for intentional use of a counterfeit); 15 U.S.C. § 1117(c) (plaintiff may recover statutory damages of up to $200,000 for use of a counterfeit mark, or up to $2,000,000 if such use was willful); 18 U.S.C. § 2320(a) (providing criminal penalties of up to 10 years in prison and a fine of up to $2,000,000 for intentionally trafficking goods or services knowingly using a counterfeit mark). The well pled facts, taken as true, do not support a finding of liability for use of a counterfeit mark.

NAVL alleges that it markets and provides transportation services under the trademark NORTH AMERICAN and the trade name NORTH AMERICAN VAN LINES. Exhibit A to the Complaint is a copy of the certificates of registration for the NORTH AMERICAN mark. NAVL has expended considerable resources in building the goodwill associated with its famous marks in connection with transportation services. NAVL markets its transportation services through its websites: www.northamericanvanlines.com and www.northamerican.com.

NAVL alleges that Defendant uses a confusingly similar company name (North America Moving Systems) to market its transportation services through a confusingly similar domain name (northamericamoving.com). This conduct, although violative of the Lanham Act, is not the same as using a mark that is identical or substantially indistinguishable. The Court has reviewed the marks attached as Exhibit A to the Complaint and compared them to the marks used on the provided screenshot copies of Defendant's website [ECF No. 48-3].

The image below is from Defendant's website.



The following logo, which contains NAVL's NORTH AMERICAN mark, is located on NAVL's website:



A comparison reveals that, although the words are similar, they are not identical. Perhaps more importantly, the fonts and accompanying graphics are quite distinguishable. Thus, while the factual allegations in the pleading are sufficient to impose liability for using a colorable imitation that is likely to cause confusion, especially when considered in context—similar services and a confusingly similar domain name—they do not entitle NAVL to the higher civil damages that are applicable to counterfeit marks.

Where does that leave NAVL? It has explicitly elected to pursue statutory damages for the trademark violations (Pl.'s Mem. 14, ECF No. 48 ("NAVL elects statutory damages here.")), a right that it could exercise only if Defendant was guilty of using a counterfeit mark. When statutory damages are not available, a successful Lanham Act litigant may recover, "subject to the principles of equity, . . . (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

> The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction

> claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

*Id.* Under this statutory scheme, the monetary relief awarded by a court "must be great enough to further the statute's goal of discouraging trademark infringement but must not be so large as to constitute a penalty." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985) (citing *Seven-Up Co. v. O-So-Grape Co.*, 283 F.2d 103, 106 (7th Cir. 1960)); *see also BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092 (7th Cir. 1994) (noting that Lanham Act "[r]emedies are intended to make violations of the Act unprofitable, but not to act as a penalty"). Indeed, "[a] successful plaintiff in a trademark infringement case is not always entitled to a monetary award in addition to injunctive relief, since any award for damages is subject to the principles of equity which give the court discretion based upon a wide range of considerations." *Otis Clapp & Son*, 754 F.2d at 746 (quoting *Ramada Inns, Inc. v. Apple*, 482 F. Supp. 753, 757–58 (D.S.C. 1980)).

Like the Lanham Act, the Indiana Trademark Act contemplates injunctive relief, as well as damages based on profits derived from an infringement or damages suffered by reason thereof. Ind. Code § 24-2-1-14.

Because NAVL elected to recover statutory damages, it did not provide documentary evidence or detailed affidavits from which the Court can ascertain an amount of damages. In an unfair trade practices case, "the plaintiff may not recover if he fails to prove that the defendant's actions caused the claimed harm." *Otis Clapp & Son*, 754 F.2d at 745. NAVL's submissions do

not show that Defendant's conduct caused NAVL any harm, much less establish the amount of that harm.

However, the Court also has the power to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under [15 U.S.C. § 1125(a), (c), or (d)]." 15 U.S.C. § 1116(a). A permanent injunction is appropriate if (1) a plaintiff has suffered an irreparable injury, (2) legal remedies are inadequate to compensate for that injury, (3) an equitable remedy is warranted when considering the balance of hardships between the parties, and (4) the public interest would not be disserved if the injunction is issued. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Upon consideration of these factors, the Court finds it appropriate to permanently enjoin Defendant from using North America or North American in connection with moving or storage services. Defendant's poor online consumer reviews show that loss of goodwill is a harm that NAVL may incur and which cannot be adequately measured or compensated by monetary damages. Defendant, who has indicated it is no longer operating a business under the infringing name, would suffer no appreciable hardship by the issuance of an injunction. Finally, the public interest would be served by preventing consumer confusion in the marketplace. *See, e.g.*, *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 19 (7th Cir. 1992) (noting that truthful advertising is at the heart of the Lanham Act).

### 2. *Cybersquatting*

The allegations in the First Amended Complaint, accepted as true, support NAVL's claim that Defendant has violated the Anti-cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d). The ACPA provides a remedy to victims of "cybersquatting," defined as "the bad faith

registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Vulcan Golf, LLC v. Google, Inc.*, 726 F. Supp. 2d 911, 915 (N.D. Ill. 2010). NAVL uses two domain names with its NORTH AMERICAN mark to market and sell its moving services: www.northamerican.com and www.northamericanvanlines.com. Defendant sells its moving and storage services through a website located at www.northamericamoving.com. As Defendant's registered domain name is confusingly similar to NAVL's trademark and domain names, with the intent to divert customers away from NAVL's domain so Defendant could profit from NAVL's goodwill in the moving industry, liability is established.

A plaintiff in a cybersquatting action may, before entry of judgment, elect statutory damages in lieu of actual damages. 15 U.S.C. § 1117(d). Statutory damages must be at least $1,000 and not more than $100,000 per domain name. *Id.* This statutory damage provision is similar to the provision under the Federal Copyright Act. *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 442 (4th Cir. 2011) (citing *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1205 (11th Cir. 2009; *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002)). Because discouraging wrongful conduct is a goal of these provisions, the seriousness of the conduct is a determining factor. *Newport News*, 650 F.3d at 442; *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012) (noting that "courts generally consider a number of factors . . . , including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a serial cybersquatter . . . and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings") (internal quotation marks and citation omitted).

Here, NAVL has requested the maximum of the statutory damages, $100,000. NAVL asserts that such an award would penalize Defendant for its bad faith intent to profit from unlawful use of a similar domain name, intending to mislead and deceive the public. NAVL also asserts that it would have a deterrence effect. NAVL provides a string citation of cases where $100,000 per domain has been awarded when the defendant's actions were willful and done in bad faith.

The Court agrees that such an award is appropriate, particularly in light of the allegation in the First Amended Complaint, which the Court must take as true, that NAVL has "received information and documentation evidencing that Defendant has been misrepresenting itself as NAVL." (First. Am. Compl. ¶ 32.) In addition, Defendant should be enjoined from using any domain incorporating NAVL's trademark or a confusingly similar mark, and should be required to transfer the www.northamericamoving.com domain to NAVL it if retains any interest in the domain.

### 3. *Attorney Fees and Costs*

Under 15 U.S.C. § 1117, trademark infringement plaintiffs may recover "the costs of the action," and "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The award of costs is made as a matter of course. *Id.*; Fed. R. Civ. P. 54(d)(1). The decision to award attorney fees is left to the court's discretion. *TE-TA-MA Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 257 (7th Cir. 2004).

Willful infringement on the part of defendants is one way in which a case may be "exceptional" for the purpose of awarding attorney fees. *NCAA v. Kizzang LLC*, 304 F. Supp. 3d 800, 813 (S.D. Ind. 2018) (citing *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 638 (N.D. Ill. 2016)); *see also Otis Clapp & Son*, 754 F.2d at 746 ("Exceptional cases that would justify an award of attorney's fees are ones in which the acts of infringement can be characterized as malicious,

fraudulent, deliberate, or willful." (citing H.R.Rep. No. 93–524 H.R.Rep. No. 93–524, 93d Cong., 1st Sess., 2 (1973); S.Rep. No. 93–1400, 93d Cong.2d Sess., reprinted in [1974] U.S. Code Cong. & Ad.News 7132, 7133)).

The Court finds that this case falls within the category of "exceptional cases" that warrant the award of attorney fees under the Lanham Act. Defendant's name is obviously similar to NAVL's mark, and Defendant used the confusing similar mark in connection with moving and storage services. This indicates willful infringement. Additionally, Defendant ignored the litigation and did not answer or otherwise plead. Defendant has not set forth any substantive defenses to NAVL's claims.

## CONCLUSION

For the reasons stated above, NAVL's Motion to Strike [ECF No. 50] is DENIED as unnecessary, and NAVL's Motion for Entry of Default Judgment [ECF No. 47] is GRANTED IN PART AND DENIED IN PART. Judgment is entered in favor of NAVL and against Defendant on Counts 1, 3, 4, 5, and 6 of the First Amended Complaint. The Court hereby:

PERMANENTLY ENJOINS Defendant North America Moving & Storage, Inc., its employees, agents, representatives, and all others in active concert or participation with it, from using North American Van Lines, Inc., trademarks, including use of the words "North America" or "North American" singularly or in conjunction with other words including as domain names, meta tags, and on the Internet when used for the purpose of offering goods or services of the type offered by NAVL. They are also permanently enjoined from registering any other domain names that contain North American Van Lines, Inc., trademarks or variations thereof;

ORDERS that Defendant forfeit the registration for www.northamericamoving.com and permanently transfer it to NAVL, if Defendant retains any rights to the domain name;

AWARDS NAVL statutory damages of $100,000 for cybersquatting;

AWARDS NAVL reasonably attorney fees and costs[3].

SO ORDERED on February 10, 2020.

       s/ *Holly A. Brady*
       JUDGE HOLLY A. BRADY
       UNITED STATES DISTRICT COURT

---

[3] That the amount of fees is a question that remains to be decided does not impact the finality of this default judgment order. *See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177, 179 (2014) ("Whether the claim for attorney's fees is based on a statute, a contract, or both, the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming final for purposes of appeal"); *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 199–200 (1988). The Court notes, however, that NAVL should not include in any Rule 54(d) motion attorney fees incurred for filing the unsuccessful Request for Clerk's Entry of Default [ECF No. 36], as NAVL had not yet secured service of its Amended Complaint when it filed that motion.